```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

**CHARLES E. DILLON,**

       Plaintiff,
  vs.                             Civil Action 2:12-CV-148
                                               Judge Marbley
                                               Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner
of Social Security,**

       Defendant.

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

    This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. Nos. 15, 16, and the Commissioner's *Memorandum in Opposition*, Doc. No. 17.

    Plaintiff Charles E. Dillon filed his application for benefits on October 31, 2008, alleging that he has been disabled since January 1, 2003, as a result of HIV, a back injury, hepatitis, depression and chronic obstructive pulmonary disease ("COPD"). *PageID* 253, 284. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    A video hearing was held on April 21, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Barry J. Brown, who testified as a vocational expert. In a decision dated May 20, 2011, the administrative law judge concluded that plaintiff was not

disabled within the meaning of the Social Security Act at any time prior to the lapse of his insured status on March 31, 2006. *PageID* 56-65. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 18, 2012. *PageID* 49-51.

Plaintiff was 42 years of age on March 31, 2006 - the date that he was last insured for disability insurance purposes. *PageID* 58, 63. He has a tenth grade, "limited" education, *PageID* 259, and prior relevant work experience as a roofer which, as performed by plaintiff, required very heavy exertion. *PageID* 118.

## II.

### The Evidence of Record

Plaintiff sustained a work-related injury on January 7, 2003, after falling two-and-a-half stories onto his back while working as a roofer.[1] X-rays taken at that time revealed no fractures. Plaintiff was diagnosed with a cervical and lumbar strain. *PageID* 343-45. A February 2003 x-ray showed some degenerative changes in the lumbar spine with osteophytes at the right and left sides of L2-L3 and L3-L4. *PageID* 330.

Craig Held, D.C., treated plaintiff for complaints of neck and low back pain from August 2003 to December 2004. *PageID* 1199-1214. Plaintiff specifically complained of stiffness and difficulty upon excessive standing, walking or bending. *Id.* Treatment consisted of myofascial release of trigger points, electrical stimulation and chiropractic manipulation. *Id.*

James Uselman, M.D., a neurosurgeon, first saw plaintiff in March 2004. *PageID* 419, 431-32. A December 2004 CT scan of the lumbar

---

[1] Plaintiff filed a claim with the State of Ohio Bureau of Workers' Compensation in connection with this injury and the workers' compensation medical records relating to this injury, which are included in the administrative record, *PageID* 1669-2072, are extensive. The Court will refer to only those records relevant to both the administrative law judge's decision and plaintiff's challenges to that decision, and relating to the period from plaintiff's alleged date of onset, *i.e.*, January 7, 2003, to the date upon which plaintiff's insured status lapsed, *i.e.*, March 31, 2006.

spine showed minor disc bulging at L1-L2, disc degeneration at L2-L3, sclerosis at L3-L4 of the articulating endplate and a diffuse disc bulge, a broad-based bulge at L4-L5, and mild a broad-based bulging disc at LS-S1. There was no evidence of spinal stenosis or compression of exiting nerve root sheaths. *PageID* 374-76. A CT scan of the cervical spine showed a minor bulge at C4-C5, some degenerative spurring at C5-C6, and a bulge at C6-C7; there was no significant foraminal stenosis or nerve root impingement. *PageID* 376-77.

In August 2005, Dr. Uselman performed laminectomies at L3-4, L4-5, and L5-S1 with pedicle screw fixation and interbody fusion of L4 through S1. *PageID* 437-43.

James H. Smith, M.D., an infectious disease specialist, first saw plaintiff, while he was hospitalized in connection with the August 2005 back surgery, for post-operative complaints of back pain and fever. Plaintiff was placed on an aggressive antimicrobial regimen. *PageID* 1099-1101.

In follow-up with Dr. Uselman, plaintiff continued to complain of pain, although the pain no longer radiated into the leg. *PageID* 422-23.  A December 2005 CT scan of the lumbar spine confirmed a solid fusion but also showed L5-S1 broad-based disc protrusion, L4-L5 disc protrusion with a moderate degree of facet arthropathy, and L3-L4 disc degeneration with a central disc protrusion and a flattened thecal sac. *PageID* 406.

In February 2006, plaintiff presented to an emergency room with acute lower extremity paralysis. *PageID* 389-97, 1795-1819. He described a sudden onset of numbness and weakness to his lower extremities. *PageID* 390. According to physician notes, there was some suspicion of malingering because of inconsistent physical examination results. *PageID* 1816.  Plaintiff also admitted to drinking 12 beers and using marijuana prior to his arrival. *PageID*

390. An MRI of the thoracic spine showed no canal or foraminal stenosis. *PageID* 1793.

Dr. Smith saw plaintiff again on March 16, 2006, relating to plaintiff's positive HIV and hepatitis C tests. *PageID* 701. In April 2006, plaintiff complained of severe pain in all of his joints, which made it difficult to get out of bed. *Id.* Dr. Smith next saw plaintiff in June 2006 when plaintiff was hospitalized for persistent nausea, vomiting, joint swelling, weight loss with arthralgias, temperature and malaise, which had developed over the prior two weeks. *See PageID* 521.  Dr. Smith "initially was concerned that [plaintiff's symptoms] were related to his HIV medications" and not to any organic impairment. *PageID* 1096-98.  However, further testing eliminated plaintiff's medications as the cause of his symptoms.  According to Dr. Smith, it was "unclear what the etiology of all of his discomfort is." *Id.* Dr. Smith continued plaintiff's HIV medications and worked for better control of plaintiff's pain. *Id.*, *PageID* 701.

In September 2006, plaintiff underwent removal of hardware from his back.  *PageID* 433-36. However, plaintiff's complaints of pain persisted. *PageID* 1735-37.

In December 2006, Dr. Smith stated that he was "unable to comment on [plaintiff's] disability regarding the time of his back surgery in August 2005" but opined that plaintiff was "completely and totally disabled" since at least March 16, 2006.  *PageID* 701.

State agency physician Leigh Thomas, M.D., reviewed the file in January 2010. *PageID* 2074-81. According to Dr. Thomas, plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and ten pounds frequently; he could stand and/or walk about six hours in an eight-hour workday and could sit about six hours in an eight-hour workday. *PageID* 2075.  Plaintiff could only occasionally climb ramps or stairs, stoop, crouch and crawl. *PageID* 2076.  He could never climb ladders, ropes or scaffolds. *Id.*  Dr.

Thomas also found that plaintiff's allegations were partially credible. *PageID* 2079.

Plaintiff testified at the administrative hearing that he suffers from constant back pain which radiate into his legs. *PageID* 84. Surgery did not alleviate the pain. *Id.* Plaintiff initially testified that the pain interferes with his ability to sleep, *id.*, but he later testified that he sleeps 15 or 16 hours per day, *PageID* 89, with the assistance of prescribed sleep medication. *PageID* 94. He is unable to sit, stand or walk for a prolonged period. *Id.* He can sit for no more than 15-20 minutes and can stand for no more than 25-30 minutes. *PageID* 85. He rated his typical pain level at 8 on a 10-point scale; on a bad day, "there's no scale" for measuring his pain. *PageID* 97.

Plaintiff testified that he contracted HIV during his surgery. *PageID* 86. The condition has made him weaker, and has resulted in hospitalizations for pneumonia; he has "been on life support three times." *Id.* The condition is controlled by medication in that he has not been diagnosed with AIDS. *PageID* 112-13.

Plaintiff also testified that he suffers from arthritis in his lower back. *PageID* 87. He has difficulty getting out of bed.

He also complained of persistent nausea, weakness, vomiting, and weight loss, symptoms that have worsened since his August 2005 surgery. *PageID* 88-90.

Plaintiff also complained of depression, which began three or four years prior to the April 2011 administrative hearing, "[r]ight after they told me I had HIV." *PageID* 90. He began treatment for the condition in 2007. *PageID* 113. He must be reminded to take his medication. *PageID* 91.

Plaintiff utilizes an inhaler every 3-4 days for COPD. He wheezes constantly. *PageID* 95.

A nurse assists plaintiff in his home, and performs the cooking, cleaning, laundry, and care of plaintiff's dog. *PageID* 98. He visits

his mother, *PageID* 99, and occasionally socializes with friends. *PageID* 116.

The record also documents a history of substance abuse and plaintiff acknowledged that he used cocaine as recently as two weeks prior the hearing. *PageID* 109. He controls his use of alcohol and uses drugs only when he is "really depressed." *PageID* 110.

## III.
### Administrative Decision

In his decision, the administrative law judge found that plaintiff suffers the severe impairments of degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease, a history of HIV, hepatitis, depression, and a history of polysubstance abuse. *Id.* Plaintiff's impairments neither meet nor equal a listed impairment. *Id.* The administrative law judge next found that, through the date that plaintiff was last insured, he had the residual functional capacity to perform a reduced range of light exertion:

> The claimant could lift and/or carry and push and/or pull a maximum of 20 pounds occasionally and 10 pounds frequently; sit for four hours at a time and a total of eight hours in an eight hour work day; and walk and/or stand up to four hours at a time and a total of six hours in an eight hour work day. The claimant was precluded from climbing ladders, ropes, or scaffolds; but could perform occasional climbing or ramps or stairs; and occasional balancing, stooping, kneeling, crouching, or crawling. The claimant was further limited to simple, repetitive, unskilled work.

*PageID* 60. In making this finding, the administrative law judge gave "no weight" to Dr. Smith's opinion of disability:

> The claimant's infectious disease specialist, James H. Smith, M.D., started treating the claimant in August 2005 when he was treated for a post-operative infection. Subsequently he saw him in March 2006 where the doctor collected blood for testing. In April 2006, the claimant was hospitalized. Dr. Smith indicates the claimant is "totally and completely disabled since at least the date in March 2006" when he saw the claimant. However, the doctor's notes indicate no complications with regard to the

6

> claimant's HIV positive test or identify any specific limitations as a result of contracting this disease. Whether the claimant is disabled is a finding reserved for the Commissioner (20 CFR 404.1527(e), 416.927(e), and Social Security Ruling 96-5p). Furthermore, there is no treatment record indicating significant impairment or limitations identified in Dr. Smith's record. Therefore, his opinion is given no weight.

*PageID* 63. Instead, the administrative law judge accorded "significant weight" to the opinion of the state agency physician, Dr. Thomas. *Id.*

The administrative law judge also found that plaintiff's testimony and subjective complaints were not fully credible:

> The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the medical history, the reports of treating and examining practitioners, the degree of medical treatment required and the claimant's own description of his activities and lifestyle.

*PageID* 61. The administrative law judge then devoted more than two pages of his decision to an examination of plaintiff's subjective complaints in light of the objective evidence and plaintiff's own testimony. *PageID* 61-63.

Relying on the vocational expert's testimony, the administrative law judge found that, prior to the date that plaintiff's insured status lapsed, his residual functional capacity precluded the performance of his past relevant work as a roofer but would permit the performance of other work that exists in significant numbers in the national economy. *PageID* 63-64. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act at any time from his alleged onset date of January 1, 2003, through March 31, 2006, *i.e.*, the date that he was last insured for disability insurance purposes. *PageID* 65.

## IV.

## DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff contends that the administrative law judge erred in his evaluation of Dr. Smith's opinion of disability. *Statement of Errors, PageID* 2182. Plaintiff also contends that the administrative law judge's credibility finding is not supported by substantial evidence *Id.,* at *PageID* 2184.

As noted *supra*, the administrative law judge gave "no weight" to Dr. Smith's April 2006 statement that plaintiff is "totally and completely disabled since at least" March 16, 2006. *PageID* 63. *See PageID* 701. This Court concludes that the administrative law judge

8

did not err in this regard.

To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 404.1527(d)(2). In weighing the opinion of a treating physician, the administrative law judge is required to consider factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* "reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

In assigning no weight to Dr. Smith's December 2006 opinion of disability, the administrative law judge cited the conclusory nature of the opinion as well as Dr. Smith's failure to indicate any complications regarding plaintiff's HIV positive status or to identify any specific limitations resulting from that status.  The administrative law judge also noted Dr. Smith's medical specialty as an infectious disease specialist and the fact that his treatment of plaintiff began in 2005. *PageID* 63. "Procedurally, the regulations

require no more." *Francis v. Commissioner Social Sec. Admin.*, 414 Fed. Appx. 802, 805, 2011 WL 915719 (6th Cir. March 16, 2011). Moreover, the administrative law judge's evaluation of Dr. Smith's opinion of disability is supported by substantial evidence in the record. Plaintiff's first challenge to the decision of the administrative law judge is without merit.

Plaintiff also challenges the administrative law judge's credibility determination. As noted *supra*, the administrative law judge found that plaintiff's statements concerning his impairments and their impact on his ability to work "are not entirely credible in light of the medical history, the reports of treating and examining practitioners, the degree of medical treatment required and the claimant's own description of his activities and lifestyle." *PageID* 61. In evaluating a claimant's subjective complaints, an evaluator must look to the record to determine whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, the evaluator must then determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id*. (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir.

1978).

In the case presently before the Court, the administrative law judge provided an exhaustive examination of plaintiff's subjective complaints in light of the objective evidence. *PageID* 61-63.  He noted the limited treatment for plaintiff's cervical spine issues prior to the lapse of his insured status and the fact that some of plaintiff's complaints were alleviated following the August 2005 lumbar laminectomies. *PageID* 61. He also noted the suspicion of malingering associated with plaintiff's February 2006 hospitalization.  *See PageID* 1816.  Also mentioned by the administrative law judge in considering plaintiff's credibility were inconsistencies in the record regarding plaintiff's alcohol abuse and continued smoking in light of his diagnosed COPD.  *PageID* 62.

In short, the administrative law judge applied the appropriate standards and his credibility findings enjoy substantial support in the record.  Under these circumstances, the Court has no authority to revisit those findings.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right

to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date: February 6, 2013               *s/Norah McCann King*
                                     Norah McCann King
                                     United States Magistrate Judge